IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL MORGAN, ) | |
| ) | |
| Petitioner, ) | Civil Action No. 3:24 cv 221 |
| ) | |
| v. ) | Magistrate Judge Maureen P. Kelly |
| ) | |
| LEONARD ODDO, *Warden of Moshannon* ) | Re: ECF Nos. 1 and 2 |
| *Valley Processing Center*; ) | |
| BRIAN McSHANE, *Acting Field Office* ) | |
| *Director of the Immigration and Customs* ) | |
| *Enforcement, Enforcement and Removal* ) | |
| *Operations Philadelphia Filed Office*; ) | |
| ALEJANDRO MAYORKAS, *Secretary of the* ) | |
| *Department of Homeland Security*; and ) | |
| MERRICK GARLAND, *Attorney General of* ) | |
| *the United States,* ) | |
| ) | |
| Respondents. ) | |

## MEMORANDUM OPINION

Petitioner Michael Morgan ("Petitioner") is an immigration detainee who, at the initiation of this matter, was held at the Moshannon Valley Processing Center ("MVPC") in Phillipsburg, Pennsylvania.[1]  Petitioner submitted a "Verified Petition for a Writ of Habeas Corpus" (the "Petition") on September 25, 2024. ECF No. 1, refiled as errata at ECF No. 2.  In the Petition, Petitioner challenges his lengthy immigration detention pursuant to 8 U.S.C. § 1226(c), and seeks an order requiring a bond hearing before an immigration judge ("IJ") at which the Department of

---

[1] On April 7, 2025, Petitioner was transferred to the Buffalo (Batavia) Service Processing Center in Batavia, New York. ECF No. 28.  This was done without notice to this Court, and without its approval.  Be that as it may, the transfer was effected well after the filing of this case, and does not divest this Court of jurisdiction.  See Anariba v. Dir. Hudson Cnty. Corr. Ctr., 17 F.4th 434, 448 (3d Cir. 2021).

1

Homeland Security ("DHS") bears the burden to demonstrate that he should remain detained. ECF No. 2 at 1, 24-25. For the reasons that follow, the Petition will be conditionally granted.

I.   **RELEVANT BACKGROUND AND FACTS**

In the Petition, Petitioner alleges that he is a citizen of Jamaica, and a lawful permanent resident of the United States since his immigration here as a child in 1984. Id. at 3-4.

Petitioner was convicted of second degree murder and firearms violations in Maryland in 1995. Id. at 5-6. After his release from prison sometime around 2005, Petitioner was convicted of federal firearms trafficking conspiracy in 2022. Id. at 6. See also United States v. Morgan, No. 21-556 (S.D.N.Y. June 6, 2022), ECF No. 30. Petitioner's state convictions for murder and firearms violations, and his federal firearms conviction, arose from separate acts. ECF No. 2 at 5-6; ECF No. 11-4 at 5. Respondents further assert that Petitioner was adjudicated to be a youthful offender on robbery and drug charges in 1992. ECF No. 11 at 3; ECF No. 11-1 at 3.

Petitioner has been in immigration custody by DHS since October 23, 2023, when he was served a Notice to Appear ("NTA") to face charges of removability in immigration court. ECF No. 2 at 7; ECF No. 2-3 at 1-4.

Petitioner was found to be removable by an IJ on January 31, 2024, pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii) (INA § 237(a)(2)(A)(iii)), for committing aggravated felonies defined by 8 U.S.C. §§ 1101(a)(43)(A), (F), and (U) (INA §§ 101(a)(43)(A), (F), and (U)).[2] ECF No. 11-4 at 6. Petitioner sought deferral of removal under the Convention Against Torture ("CAT"). ECF No. 11-4 at 7; ECF No. 11-5 at 4. That relief initially was denied by an IJ on June 4, 2024. ECF

---

[2] Rather than citing to the United States Code, and for reasons that are unclear, immigration officials tend to cite directly to sections of the Immigration and Nationality Act ("INA"). These citations often do not match up to the United States Code in any discernable fashion. In order to avoid unnecessary confusion, this Court will provide parallel citations to the United States Code and the INA where necessary.

No. 2 at 10. He appealed from that denial to the Board of Immigration Appeals ("BIA") and that appeal was pending at the time of filing of the Petition. Id.

Since the Petition was filed, the BIA remanded Petitioner's case to the IJ on November 13, 2024, with instructions to consider additional evidence in support of deferral of removal. ECF No. 17-2 at 1 and 2-3. After some delay – which the record does not indicate was attributable to the Petitioner – the IJ held a merits hearing on whether Petitioner should be granted deferral of removal on February 28, 2025. ECF Nos. 22, 24. The IJ granted relief to Petitioner on March 11, 2025. ECF No. 26 at 2. DHS appealed the IJ's decision to grant deferral of removal to the BIA on April 10, 2025. ECF No. 30 at 2.

Prior to this, Petitioner alleges that he requested release from Immigration and Customs Enforcement ("ICE") on April 12, 2024. ECF No. 2 at 10. He alleges that his counsel followed up with ICE officials on this request several times, on April 17, May 13, May 23, June 3, June 10, and June 21, 2024. ICE ultimately responded on June 21, 2024, denying the request in a letter dated April 18, 2024. Id. See also ECF No. 2-4 at 1.

The parties agree that, since October 23, 2023, Petitioner has been held pursuant to 8 U.S.C. § 1226(c), which mandates the detention of certain criminal aliens who are not subject to an order of removal. ECF No. 30 at 2. Petitioner asserts that, during this time, he never has been granted a bond hearing before an IJ. ECF No. 17 at 2. Respondents do not dispute this assertion, and there is nothing on the record before this Court that indicates otherwise.

The Petition was effectively filed on September 26, 2024. ECF No. 1. Respondents answered on October 30, 2024. ECF No. 11. Petitioner's Traverse was filed on December 4, 2024. ECF No. 17. The parties consented to the jurisdiction of a United States Magistrate Judge on October 9, 2024. ECF Nos. 8 and 9.

The Petition is ripe for consideration.

## II. DISCUSSION

28 U.S.C. § 2241 allows a court to grant a writ of habeas corpus to a prisoner held "in violation of the Constitution or laws or treaties of the United States[.]" Id. at § 2241(c)(3). This Court has jurisdiction to hear the merits of this case. German Santos v. Warden Pike Cnty. Corr. Fac., 965 F.3d 203, 208 (3d Cir. 2020) (finding that a district court has jurisdiction under Section 2241 to consider an alien's challenge to detention by immigration authorities under Section 1226(c)).

8 U.S.C. § 1226(c), states, in pertinent part:

(1) Custody

The Attorney General shall take into custody any alien who--

\*\*\*

(B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title[.]

The statute allows for the release of certain aliens under circumstances that do not apply here. Id. at § 1226(c)(4).

The language of the statute seemingly requires the mandatory detention of aliens like Petitioner, who are removable due to the commission of aggravated felonies, prior to the issuance of a final order of removal. But, in German Santos, the United States Court of Appeals for the Third Circuit recognized that "an alien lawfully present but detained under § 1226(c) can still challenge his detention under the Due Process Clause [of the Fifth Amendment]." 965 F.3d at 210. Indeed, "when detention becomes unreasonable, the Due Process Clause demands a hearing." Id. (internal citations omitted). The Third Circuit held that such a "hearing" in this context is a bond hearing before an IJ, at which the government bears the burden of proof to justify detention

4

by clear and convincing evidence. Id. at 213. "That evidence must be individualized and support a finding that continued detention is needed to prevent him from fleeing or harming the community." Id. at 214.

The determination of whether Petitioner's continued detention under Section 1226(c) is unreasonable is a "highly fact-specific inquiry." 965 F.3d at 210 (internal citations and quotation marks omitted). To aid in this inquiry, the Third Circuit has identified four factors for consideration. These factors are: (a) the duration of Petitioner's detention; (b) the likelihood of continued detention; (c) the reasons for any delay; and (d) the conditions of Petitioner's confinement. Id. at 212. These will be evaluated *seriatim*.

### A.  Duration

The first and "most important" factor for the habeas court to consider is the "duration of detention." Id. at 211. Although the Third Circuit refused to adopt a presumption of reasonableness of any specific duration in German Santos, it recognized that the detention of the petitioner in that case for two-and-a-half-years was "five times longer than the six months that [the Supreme Court in Demore v. Kim, 538 U.S. 510, 530-31 (2003)] upheld as only 'somewhat longer than average.'" German Santos 965 F.3d at 211, 212.

Here, Petitioner has been detained since October 23, 2023 – just shy of 18 months as of the date of this writing. Under the circumstances, this Court finds that the length of his detention without a bond hearing by an independent arbiter weighs strongly in favor of granting relief.

### B.  Likelihood of Continued Duration

The second factor the habeas court must consider is "whether the detention is likely to continue." Id. at 211. When an alien's removal proceedings "are unlikely to end soon, this suggests that continued detention without a bond hearing is unreasonable." Id.

Here, Petitioner recently was granted relief in the form of deferral of removal on March 11, 2025. ECF No. 26 at 2. DHS appealed the IJ's decision to grant deferral of removal to the BIA on the last possible day to do so – April 10, 2025. ECF No. 30 at 2. Those proceedings remain in their infancy, and Petitioner remains detained by DHS. Further, DHS has rebuffed Petitioner's prior request for release in a manner that the record suggests was dismissive and unnecessarily delayed. ECF No. 2 at 10; ECF No. 2-4 at 1.

Given these facts, it is likely that Petitioner will remain detained for the foreseeable future. This factor also weighs heavily in favor of granting relief.

C.     **Reasons for Delay**

The third factor that the habeas court must consider is "the reasons for the delay such as a detainee's request for continuances." German Santos, 965 F.3d at 211. In this analysis, the Court "ask[s] whether either party made careless or bad-faith 'errors in the proceedings that causes unnecessary delay.'" Id. (quoting Diop v. ICE/Homeland Sec., 656 F.3d 221, 234 (3d. Cir. 2011)).

Courts are not to "hold an alien's good-faith challenge to his removal against him, even if his appeals or applications for relief have drawn out the proceedings" because "[d]oing so, and counting this extra time as reasonable, would effectively punish [him] for pursuing applicable legal remedies." German Santos, 965 F.3d at 211 (citations and internal quotation marks omitted). Similarly, any legal errors by the government should not be held against Respondents unless there is evidence of carelessness or bad faith. Id. "That said, detention under § 1226(c) can still grow unreasonable even if the Government handles the removal proceedings reasonably." Id. (internal citation omitted).

Here, the record does not support the conclusion that any party is responsible for the sort of unreasonable or bad faith delays contemplated by the Court of Appeals in German Santos. This factor is neutral.

**D.      Conditions of Confinement**

The fourth and final factor the habeas court considers is "whether the alien's conditions of confinement are meaningfully different from criminal punishment." German Santos, 965 F.3d at 211.

As explained above, until very recently, and for more than 17 months, DHS detained Petitioner at MVPC. Petitioner submitted evidence to the Court, in the form of a declaration signed subject to penalty of perjury, ECF No. 2-2 at 1 and 4, in which Petitioner avers that conditions at MVPC were very much like prison. These conditions include:

- being restricted to his pod from 20-22 hours a day, id. at 2;
- communal toilets shared by 70 individuals, id.;
- being forced to wear a uniform, id. at 3;
- differing security designations among the detainees, id.;
- being housed alongside "other high security individuals with a wide range of criminal convictions[,]" id.;
- restricted privileges due to Petitioner's security status, id.;
- wages for scarce inmate jobs being extremely low, and employment being controlled by prison staff, id.;
- limited access to phone calls at exorbitant rates, id.;
- no in-coming phone calls, id.
- limited food choices, id.;
- solitary confinement for disciplinary infractions, id.;
- the existence of what appears to be administrative segregation, id.;

- restricted access to medical care, which can be denied by prison officials, id. at 3-4; and
- violent interactions with other detainees and prison guards, id. at 4.

Respondents were given an opportunity to submit evidence of prison conditions in their Answer. They did not deign to provide any declaration, and instead submitted attorney argument that Petitioner's conditions of confinement are not akin to criminal punishment because he was not being held in a prison, but an immigration processing center. ECF No. 11 at 13. Respondents' distinction between the two is not entirely clear to this Court, but it appears that it is based on the alleged existence of a law library, general library, classrooms, craft rooms, day rooms with "tables, chairs, televisions, telephone, electronic tablets, and board and card games[,] and voluntary work programs." Id. at 14. Respondents further assert that detainees at MVPC "can also communicate with family members and friends via email, engage in video visits, and download music and videos." Id. Respondents rely on a four-page, redacted inspection report dated March 3, 2022, to support these contentions.[3] Respondents do not provide any affidavits, declarations, or contemporary evidence to support their argument.

---

[3] Respondents did not bother attaching a copy of this report to their Answer, and instead provided a link to a website maintained by ICE, presumably inviting the Court to perform its own research. ECF No. 11 at 14 (citing www.ice.gov/doclib/facilityInspections/moshannonValleyProcCntr_CL_03-03-2022.pdf (last visited Apr. 17, 2025)).

Respondents did see fit to attach a Report and Recommendation issued by another magistrate judge in this district on June 9, 2023, in which that judge recalls the conditions of the physical plant and food at MVPC when he held hearings there when it was a prison ECF No. 11-6. Given the age and circumstances surrounding the Report and Recommendation, the undersigned is not persuaded that it is evidence that Petitioner's conditions of confinement in 2025 were not like those of a prison. Further, almost all of the features of MVPC alleged by Respondents that presumably differentiate it from a penal setting are, in the undersigned's experience, also present at many prisons in the Western District of Pennsylvania.

Further, Petitioner responded with another declaration indicating that contact visits with family are not allowed, that the facility currently lacks classrooms and craft rooms, that he cannot afford the fees to download music and videos, and that he does not have access to email. ECF No. 17-1 at 1.

Finally, while it is implicit in the nature of this federal habeas proceeding, it is worth mentioning that, like any prison, Petitioner is not free to leave it.

Petitioner has provided sufficient contemporary, persuasive evidence in his declarations that his conditions of confinement while at MVPC were like those of a prison. Respondents' exhibits – to the extent that they can be characterized as "evidence" at all – are stale, and insufficient to rebut Petitioner's evidence. Respondents had the opportunity to submit declarations or other up-to-date evidence in support of their argument, but chose not to do so.

Accordingly, this factor weighs in favor of granting relief.

### E. Balance of Factors

Petitioner has shown that the factors set forth in German Santos balance in favor of the conclusion that his detention has become unreasonable, and that his continued detention without a bond hearing violates his rights under the Due Process Clause of the Fifth Amendment.

### III. CONCLUSION

For the reasons set forth herein, the Petition will be conditionally granted.

A certificate of appealability is not required for federal detainees seeking relief under Section 2241. Muza v. Werlinger, 415 F. App'x 355, 357 n.1 (3d Cir. 2011). See also 28 U.S.C. § 2253(c)(1). Therefore, it is not necessary to determine whether one should be issued here.

An appropriate Order follows.

Dated: April 17, 2025

BY THE COURT,

_____
MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE

cc: Counsel of record (*via* CM/ECF)